UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:11-cr-116 |
| v. ) | |
| ) | *Mattice / Lee* |
| PERRY LAMAR KEARSE ) | |

**REPORT AND RECOMMENDATION**

Defendant Perry Lamar Kearse filed a motion for a *Franks* hearing [Doc. 11] and a motion to suppress all evidence seized during the search of his residence [Doc. 14].[1] The government opposes both motions [Doc. 13].[2] For the reasons stated herein, I **RECOMMEND** that both motions be **DENIED**.

**I.      BACKGROUND**

Defendant claims his constitutional rights were violated because the affidavit of Chattanooga Police Officer Tim Tomisek (the "Affidavit") [Doc. 11-4] contains false statements and lacks probable cause for issuance of a search warrant. The Affidavit was used to obtain a state search warrant (the "Warrant") [Doc. 11-4] on July 5, 2010. The Warrant authorized a search of the residence at 2809 Calhoun Avenue in Chattanooga Tennessee, which is the residence that Defendant shared with Lisa Davis ("Davis").

---

[1] A hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) is commonly referred to as a *Franks* hearing and will be referred to as such herein. Defendant's motions were referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Docs. 12 & 15].

[2] The government's initial response in opposition [Doc. 13] treated the motion for a *Franks* hearing as if it was also a motion to suppress based on an alleged lack of probable cause for the search. After Defendant filed his motion to suppress, which challenges the government's argument that the search was also consensual [Doc. 14], a telephonic status conference was held in which counsel for both parties agreed that neither a hearing–other than the requested *Franks* hearing–nor further briefing on the motions was necessary or requested.

The Affidavit set forth the following information:

    1.    I am a certified police officer, duly appointed and qualified as such in the city of Chattanooga, Hamilton County, Tennessee. I have been a police officer since 2001 and am currently a Chattanooga Police Officer assigned to Property Crimes investigations. During my service I have investigated and prosecuted numerous cases involving Armed Robberies and burglaries. My current duty assignment is to investigate and prosecute burglaries, robberies and theft. Specifically, I have been placed on special assignment to investigate some 19 burglaries which occurred in the North Chattanooga area within the month of June 2010.

    2.    On 6/23/2010, home owner, Calvin Keeten, [handwritten address] reported that someone entered his house through an unlocked window and took his flat screen TV, DVD player, Playstation, Apple Laptop, Verizon phone, cash and several credit cards. The credit cards were used that same day at 0557 hours at the Walmart on Greenway view Dr. Video survallence showed a green Ford Taurus with a black male and 2 black female suspects. It was clear that two of the suspects are Lisa Davis and Perry Kearse of 2809 Calhoun Ave. On 7/5/2010, I drove to the house at 2809 Calhoun Ave and saw the same car from the photographs parked in the driveway. Upon knocking on the door, someone asked who was there and officers announced, "Chattanooga Police." Around that time, the side door opened and then quickly shut. No one ever came back to the door. Since then, both suspects have exited the residence and are temporarily in custody.

    3.    Moreover, it is a reasonable inference that these two suspects took the stolen property back to there place of residence (2809 Calhoun Ave, Chattanooga, TN. 37407) and/or or kept it in their car (1999 Green Ford Taurus license number TN 556WGB).

    4    Mr. Kearse has a long history of pawning items. On June 19, 2010 he pawned Xbox 360 games and on June 26, 2010 he pawned a 32" flat screen TV. Those type of items have been targeted in the area of North Chattanooga (burglaries).

[Doc. 11-4] (reproduced as it appears in the Affidavit).

## II. ANALYSIS

### A. *Franks* Hearing

In order to be entitled to a *Franks* hearing, a defendant must make a dual showing. First, the defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Second, the offending information must be "necessary to the finding of probable cause;" if the offending information is excluded and probable cause still remains, a *Franks* hearing is not required. *Id.* at 156.

Regarding the first prong of the *Franks* standard, the substantial preliminary showing that a false statement was included by the affiant, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has elaborated:

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citations omitted). Significantly, in order to be entitled to a *Franks* hearing, the defendant must make a substantial preliminary showing that the affiant deliberately or recklessly included false information in the affidavit. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003); *United States v. Ayen*, 997 F.2d 1150, 1152 (6th Cir. 1993).

Defendant fails to point to specific false statements in the Affidavit that he claims were made intentionally or with reckless disregard for the truth. Instead, Defendant's offer of proof appears to

3

be questioning why police reports do not contain certain facts contained in the Affidavit, and Defendant also questions the impression created by the Affidavit. This is not sufficient for a *Franks* hearing because Defendant has not met his heavy burden to make the required substantial preliminary showing that Officer Tomisek, knowingly and intentionally or with reckless disregard, included *false* information in his Affidavit. Thus, I **FIND** Defendant has not made the requisite showing for a *Franks* hearing.

### B. Probable Cause

Having determined that the Defendant is not entitled to a *Franks* hearing, the next issue raised by the parties is whether probable cause supported the issuance of the Warrant. When, as is the situation here, a search warrant is obtained by state officers from a state court, but the evidence seized is ultimately to be used in a federal prosecution, the validity of the warrant is examined under the standards of the Fourth Amendment to the United States Constitution. *See, e.g.*, *United States v. Wright,* 16 F.3d 1429, 1437 (6th Cir. 1994). The Fourth Amendment states, *inter alia*, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

As Defendant is not entitled to an evidentiary hearing pursuant to *Franks*, this Court must make a determination of probable cause by evaluating the information contained within the four corners of the Affidavit supporting the Warrant. *See, e.g.*, *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."); *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (In reviewing the sufficiency of the evidence supporting probable cause, the court is "limited to examining the information contained within the four corners of the affidavit" in

4

light of "the totality of the circumstances.").³

In making such an evaluation, great deference is accorded to the issuing magistrates's determination of probable cause. *See, e.g.*, *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997) (determination of probable cause should not be reversed absent clear error). "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984). An affidavit supporting the issuance of a search warrant should be reviewed in a commonsense, rather than hypertechnical, manner to determine probable cause. *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003). Probable cause to conduct a search exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

I **FIND** the Affidavit lacks sufficient evidence of probable cause. The government's argument exemplifies the weakness in the Affidavit. The government contends the Affidavit "provided ample probable cause to believe that evidence of a burglary or possession of stolen property would be found at Defendant's residence. Defendant was observed with a female who used credit cards that had been stolen during a burglary committed just hours before." [Doc. 13 at PageID#: 60-61]. And, had this information actually been provided in the Affidavit, the government would likely prevail in its probable cause argument. Unfortunately for the government's position, while the Affidavit states the stolen "credit cards were used that same day at 0557 hours at the

---

³ In deciding whether the warrant application contained sufficient facts to support a reasonable belief in probable cause, a court considers the facts set forth in the affidavit and the facts presented during the search warrant proceeding to the issuing judicial officer. *United States v. Frazier*, 423 F.3d 526, 535-36 (6th Cir. 2005). There is no suggestion in the record that any facts outside of the Affidavit were presented to the issuing judicial officer in this case.

5

Walmart," it omits any information to link whoever used the credit cards at the Walmart to anyone in the Defendant's car. This apparent oversight renders the following statement in the Affidavit that the "video survallence [sic] showed a green Ford Taurus with a black male and 2 black female suspects" leaving the Walmart insufficient to establish probable cause.

From the pleadings filed in this case, it appears the police actually knew that one of the females in the car used the stolen credit cards at the Walmart, but nowhere does the Affidavit make this connection. Strictly looking at the four corners of the Affidavit, it shows only that Defendant, Davis and another female "suspect" left the Walmart on June 23, 2010, near the time credit cards stolen that day was used there, that Officer Tomisek believed it was a reasonable inference that stolen property would be in the car or residence of Defendant and Davis, that Defendant pawned a game system and television (which were not identified as stolen) once before and once after the June 23, 2010 burglary, that Defendant had a "long history of pawning items,"[4] that Officer Tomisek was investigating some 19 burglaries that occurred in the North Chattanooga area within the month of June 2010 in which the burglars targeted items such as game systems and televisions, and that Defendant and Davis chose not to answer the door when the police attempted to contact them at their residence.

Viewing the Affidavit with the required deference and in a commonsense manner, I **FIND**

---

[4] While the parties make much ado about whether the Affidavit correctly states Defendant had a long history of pawning items, this dispute does not change the results. First, Defendant did not meet the requirements for a *Franks* hearing to challenge this statement. Second, the statement adds little to the analysis because the Affidavit does not indicate any of the items pawned by Defendant, whether it be many or few or over a long period of time, were stolen goods. That Defendant pawned two items the month prior to the issuance of the Warrant that were not identified as stolen, but were the types of items targeted in the burglaries, adds little to the analysis of probable cause to search Defendant's residence or car under the circumstances stated in the Affidavit.

6

it does not establish probable cause for issuance of the Warrant.[5] Nothing in the Affidavit explained in any way why Defendant, or the other people in the car, were "suspects," nothing in the Affidavit indicated Defendant had pawned stolen goods, and there is nothing inherently suspicious about failing to respond to the police at the front door.

    **C.    Good Faith Reliance**

The government contends that even if the Affidavit lacked probable cause, the officers executing the search relied in good faith upon the warrant, such that the evidence should not be excluded. I **FIND** it would be reasonable for a well-trained officer to rely on the Warrant in good faith.

The Supreme Court has identified an exception to the exclusionary rule in circumstances where an officer acts in good faith when executing a warrant he reasonably believes to be valid.[6] *United States v. Leon*, 468 U.S. 897 (1984). As the Sixth Circuit recently explained:

> Because the 'sole purpose' of the exclusionary rule 'is to deter future Fourth Amendment violations," *Davis v. United States*, 564 U.S. ___,

---

[5] Given this finding, it is not necessary to address Defendant's "staleness" argument in detail. However, I **FIND** the Affidavit does not suffer from staleness.

[6] The Court in *Leon* enumerated four situations in which an officer's reliance on a search warrant could not be presumed reasonable:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

468 U.S. at 914-23. Defendant did not address the government's good faith argument.

> 131 S. Ct. 2419, 2426 (2011), a criminal defendant seeking to suppress the fruits of a search must do more than demonstrate that the police violated the Fourth Amendment. He must show that suppressing the evidence will yield "[r]eal deterrent value." *Id.* at 2427. That burden is especially relevant when officers follow the constitutionally preferred route, namely presenting evidence of illegal activity to a neutral magistrate who finds probable cause and issues a search warrant. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). To suppress the fruits of such a search, a defendant must show that, despite the magistrate's authorization, the police could not have relied on the warrant in good faith. *See United States v. Leon*, 468 U.S. 897, 922 (1984). One way to do this is to demonstrate that the information presented in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

*United States v. Justice*, No. 10-3749, 2012 WL 360814, at *2 (6th Cir. Feb. 3, 2012) (reversing district court because officers who executed search warrant could have relied in good faith on magistrate's finding of probable cause).

Even though the Warrant was not supported by an Affidavit containing sufficient probable cause, I nonetheless **FIND** it was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Leon*, 468 U.S. at 923. I also **CONCLUDE** suppression of the evidence would serve no purpose in deterring officers from future violations because "the faceless, nameless 'reasonably well trained officer' in the field, upon looking at [the Warrant]," would not have realized that "the search was illegal, despite the magistrate's decision to the contrary." *See United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (quoting *United States v. Helton*, 314 F.3d 812, 824 (6th Cir.2003) (citing *Leon*, 468 U.S. at 923)). In any event, it is not necessary to belabor the issue of good faith because the police obtained consent for the search as discussed below.

8

## D. Consent

The government also contends that even if all of its other arguments were to fail, the search was lawful because the government obtained written consent for the search from Davis, and her consent provides an independent and lawful basis for the search. Defendant responds that because he was not asked for, and did not give, consent for the search–although he was available to be asked– the consent is invalid under *Georgia v. Randolph*, 547 U.S. 103 (2006).[7]

The search of a residence, without a warrant and without probable cause, "but with proper consent voluntarily given, is valid under the Fourth Amendment." *United States v. Matlock*, 415 U.S. 164, 166 (1974) (referencing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)). Such consent must be given by an individual who possesses authority as an occupant of the residence or whom the police reasonably believe possess such authority. *Randolph*, 547 U.S. at 109. The parties do not dispute that both Defendant and Davis possessed such authority.

As Defendant points out, *Randolph* stands for the proposition that when one co-resident grants consent to search but another co-resident refuses, a warrantless search is unreasonable as to the resident who refuses. *Id.* *Randolph*'s holding, however, does not extend to a "potential objector" who stands by, mute. *Id.* at 121. Instead, *Randolph* allows one co-tenant to override another's consent only if he *expressly* refuses consent. *See id.* at 106 (articulating the question presented as whether a warrantless search may be conducted when "an occupant . . . is present at the scene and *expressly refuses* to consent") (emphasis added).

The Sixth Circuit has refused to extend *Randolph* to protect silent co-residents. As in

---

[7] While Defendant referenced that Davis was asked for consent several times and did not consent until placed in the back of a police car, he has not indicated that he has standing to, or is even attempting to, raise an issue concerning the validity of Davis's written consent.

9

*Randolph*, the Sixth Circuit has held a search is unlawful when the defendant was physically present and actually objected before the search began. *United States v. Tatman*, 397 F. App'x 152 (6th Cir. 2010). The Sixth Circuit, however, distinguished those facts from another line of cases in which "the defendant did not object, but argued that the search was unconstitutional because the police failed to provide a fair opportunity to do so." *Id.* at 162. In the latter type of case, a defendant's failure to expressly refuse consent is fatal to his *Randolph* claim. *See United States v. Stanley*, 351 F. App'x 69, 72 (6th Cir. 2009) (concluding that a defendant's "refusal to speak with the officers" was not "the functional equivalent of an expressed non-consent").

Furthermore, even if police purposely avoid asking a defendant for consent because they believe it might be refused, a co-tenant's permission will be effective unless the police "remove[] the [defendant] from the entrance for the sake of avoiding a possible objection." *United States v. Ayoub*, 498 F.3d 532, 540-41 (6th Cir. 2007) (citation and internal quotations omitted). Instead, "a consensual search will stand where a potential objector . . . never refused consent–even if he was available." *Id.* at 540 (citation omitted). Therefore, Defendant's lack of consent does not make the search of the house unreasonable as to Defendant since the police obtained consent from Davis and Defendant has not contended he was removed for the sake of avoiding a possible objection.

Accordingly, I **CONCLUDE** that Defendant's *Randolph* challenge cannot succeed.[8] Thus, even if the good faith exception to the exclusionary rule did not apply, the search would still be constitutional because the police obtained consent for the search from Davis without any objection

---

[8] One final issue will be addressed. To the extent Defendant contends that because the police waited for the Warrant to arrive before they began the search, the consent is legally irrelevant, he has provided no support for this novel argument. There is no indication Davis's consent was revoked in any way prior to the search.

10

expressed by Defendant.

## III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[9] that both Defendant's motion for a *Franks* hearing [Doc. 11] and motion to suppress [Doc. 14] be **DENIED**.

                                                      s/*Susan K. Lee*
                                                      SUSAN K. LEE
                                                      UNITED STATES MAGISTRATE JUDGE

---

[9] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are "frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).